UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD KLAISS,

    Plaintiff,

v.

STEEL TOOL & ENGINEERING
COMPANY, a Michigan corporation,

    Defendant.

**JURY TRIAL DEMANDED**

Case No.
Hon.
Mag.

Nakisha N. Chaney (P65066)
SALVATORE PRESCOTT & PORTER
Attorney for Plaintiff
105 E. Main Street
Northville, Michigan 48167
(248) 679-8711
chaney@spplawyers.com

## COMPLAINT

Plaintiff Richard Klaiss brings this complaint for violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615.

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is an individual who resides in Wyandotte, Michigan.

2. Defendant Steel Tool & Engineering Co. is a domestic corporation that operates and conducts business in Trenton, Michigan.

3. The events and omissions giving rise to this complaint occurred at Defendant's Trenton facility.

4. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's FMLA claims.

5. Venue is in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## GENERAL ALLEGATIONS

6. Defendant provides manufacturing, assembly and engineering services in the aerospace precision machining and fabrication industry.

7. Defendant has at any given time 100 or more employees, with routine turnover.

8. Defendant employed Plaintiff for nearly 14 years, most recently as a water jet operator.

**Defendant's FMLA Practices**

9. Defendant's policies and practices did not and do not comply with FMLA.

10. Among other things, Defendant's attendance policy provided, "Employees will be granted a three to five day consecutive leave, one per year, for absences associated with prolonged illness, as long as 180 days of employment is completed."

11. Defendant's attendance policies included a "production hours lost" system.

12. The "production hours lost system" required employees to pay Defendant a fixed amount of money for each "production hour" that was charged to the employee for a tardy, leave, or absence.

13. The policy provided, "Production hours lost will be deducted for any attendance irregularity," and that, "It should be clearly understood that the company will refrain from evaluating the reason for attendance irregularities, but will rely on this policy for disposition of absences from work."

14. Production hours were measured in one-hour increments, such that missing even a fraction of an hour would result in an employee having to pay to Defendant the cost of missing the full hour.

15. If an employee had to miss a full day of work and did so without notice, Steel Tool charged, and required the employee to pay, for the number of production hours equivalent to the number of hours for which the employee was scheduled to work. (For example, if an employee was scheduled to work for 10 hours and did not give notice that he would be absent (for any reason), the employee was charged with, and had to pay Defendant for, 10 production hours).

16. The hourly rate at which an employee was charged varied, depending on whether the employee elected a single-person, two-person or family medical plan.

17. Employees with family medical plans paid nearly $50.00 per production hour used.

18. Employees were compelled to comply with the "production hours lost" system.

19. Compliance was a condition of employment and eligibility to receive benefits.

**<u>Defendant Wrongfully Denies Plaintiff FMLA</u>**

20. Plaintiff's wife suffers multiple serious health conditions that necessitated multiple hospitalizations and continuing treatment by various health care providers during the relevant time frame, including but not limited to:

   a. severe endometriosis with organ impairment/failure, necessitating a complete hysterectomy in 2017;
   b. constrictive pericarditis, which necessitated open-heart surgery in 2015;
   c. congestive heart failure;
   d. fibromyalgia; and
   e. multiple serious digestive conditions, including a tumor on her stomach lining and intestinal damage arising from endometriosis.

21. In 2015, Plaintiff requested FMLA leave to care for his wife, including but not limited to when she needed to have open-heart surgery.

22. Plaintiff was eligible for and entitled to receive the FMLA leave he requested.

23. Defendant initially denied the request.

24. However, Defendant later approved the request, but only for those days in which Plaintiff's wife was actually in the hospital.

25. Defendant refused to provide FMLA leave for the remainder of Plaintiff's request regarding other days for which his wife required care for her serious medical conditions.

26. In 2016, Plaintiff's wife was hospitalized and received ongoing medical treatment for her various health conditions.

27. Plaintiff again requested FMLA leave to care for her.

28. Plaintiff was eligible for and entitled to receive the FMLA leave he requested.

29. Defendant denied Plaintiff's request.

30. On two occasions in 2017, Plaintiff requested FMLA time to care for his wife who, among other things, had to undergo a complete hysterectomy necessitated by severe endometriosis.

31. Plaintiff was eligible for and entitled to receive the FMLA he requested.

32. Defendant again denied Plaintiff's requests and refused to accept any supporting medical documentation.

33. Plaintiff thereafter attempted to appeal to Defendant's Vice-President, Barb Beesley, for assistance, but she refused to see him.

**Defendant Forces Plaintiff to Purchase "Production Hours" in Lieu of FMLA**

34. Defendant wrongfully withheld Plaintiff's FMLA leave time and required Plaintiff to purchase production hours from Defendant to care for his wife.

35. Defendant charged Plaintiff an exorbitant production-hour rate because Plaintiff had a family medical plan.

36. Plaintiff's production-hour rate was as high as $48.57.

37. Thus, for every absence, Plaintiff had to pay Defendant up to $48.57 per hour.

38. Employees who chose the single-person health insurance plan paid substantially less for each production hour used.

39. Employees who chose the two-person health insurance plan had a lower production hour rate than those with a family plan, but higher rate than those with a single-person plan.

40. Plaintiff's hourly wage was approximately $16.00 an hour.

41. Thus, when Defendant charged Plaintiff for a production hour (including to care for his wife for which he was eligible but denied FMLA), Plaintiff lost his wages for that time and had to pay Defendant an additional $48.57 per hour, three times his hourly wage.

42. If Plaintiff took off an 8-hour day to care for his wife, he had to pay Defendant $388.56, the equivalent of 24 hours of work at Plaintiff's regular wage.

43. To hide the charges, Defendant illegally deducted production hour payments from employees' paychecks, including Plaintiff's.

44. The payments were spread out over a six-week period.

45. Defendant characterized the payments on pay stubs as deductions for medical care.

**Defendant Terminates Plaintiff for Absenteeism**

46. In 2016, Defendant ended the "production hours" system and eventually moved to a disciplinary points-based absenteeism policy.

47. Having denied Plaintiff FMLA, Defendant charged Plaintiff points for missing work to care for his wife.

48. On November 1, 2017, Defendant discharged Plaintiff for absenteeism due to his accumulation of points.

49. Following a contested hearing regarding Plaintiff's unemployment eligibility, Administrative Law Judge Stephen Washington found in a February 6, 2018 opinion that Plaintiff "had his remaining points incurred towards his discharge, for attendance infractions that were due to his attending to his wife's illnesses, for which the employer denied him FMLA coverage, and did not record his explanation for the occurrence. The claimant had offered medical documentation, which the employer would not accept. The claimant's wife had multiple surgeries from 2015 through 2017. The employer only allowed FMLA coverage in 2015, but not after when requested in 2016 and 2017."

# COUNT I
# FMLA INTERFERENCE, DISCRIMINATION AND RETALIATION
# 29 U.S.C. § 2615

50. Plaintiff incorporates here all previously stated allegations.

51. Defendant employed Plaintiff for more than 12 months prior to Plaintiff's FMLA requests.

52. Plaintiff worked more than 1,250 hours during the relevant 12-month periods.

53. Defendant employed 50 or more employees within a 75-mile radius in 2015, 2016, 2017 and currently.

54. In 2015, 2016 and 2017, Plaintiff's wife suffered multiple "serious health conditions" necessitating inpatient hospital care and continuous treatment.

55. Plaintiff's wife suffered incapacity, chronic or long-term conditions, and conditions requiring multiple treatments.

56. Defendant knew about Plaintiff's wife's health problems and Plaintiff's need to care for her because he told HR and others, requested leave and provided documentation when Defendant would accept it.

57. In 2015 and 2016, Plaintiff requested and gave notice that he wanted to take FMLA leave, for which he was eligible, to care for his wife.

58. In 2017, Plaintiff notified Defendant multiple times of his need and desire to take FMLA protected leave.

59. Plaintiff was frequently denied leave.

60. Plaintiff had to pay money to Defendant in the form of production hour charges for FMLA-eligible absences to care for his wife.

61. Plaintiff was fired because he exercised his rights under FMLA to take time off to care for his wife.

62. Defendant disregarded the FMLA's mandates, wrongfully denied Plaintiff FMLA benefits, and required Plaintiff to pay Defendant for FMLA-eligible time used to care for his wife.

63. Defendant's wrongful denials of FMLA and penalization of Plaintiff for using FMLA-related time (from which Defendant financially benefited) are willful FMLA violations committed in bad faith.

64. As a result, Plaintiff is entitled to damages, attorney's fees, costs and all other just and proper relief.

## **RELIEF REQUESTED**

Plaintiff seeks all legal and equitable relief available to him, including:

a. economic damages, including wage loss;

b. noneconomic damages;

c. liquidated/punitive/statutory damages;

d. attorney fees and costs; and

e. all other relief deemed just and proper.

        Respectfully submitted,

        /s/_ Nakisha N. Chaney_____
        Nakisha N. Chaney (P65066)
        Salvatore Prescott & Porter PLLC
        Attorneys for Plaintiff
        105 E. Main Street
        Northville, Michigan 48167
        (248) 679-8711
        chaney@spplawyers.com

Dated: June 29, 2018

## **JURY DEMAND**

Plaintiff demands a jury trial in this matter.

        Respectfully submitted,

        /s/__ Nakisha N. Chaney_____
        Nakisha N. Chaney (P65066)
        Salvatore Prescott & Porter PLLC
        Attorneys for Plaintiff
        105 E. Main Street
        Northville, Michigan 48167
        (248) 679-8711
        chaney@spplawyers.com

Dated: June 29, 2018