UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD KLAISS,

       Plaintiff,

                                Civil Case No. 18-12053

v.                                  Honorable Linda V. Parker

STEEL TOOL & ENGINEERING CO.,

       Defendant.

_____/

## **OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

On June 29, 2018, Plaintiff filed this lawsuit against his former employer, Steel Tool and Engineering Company ("STE"), challenging deductions to his wages and the denial of his request for leave under the Family Medical Leave Act ("FMLA"). Plaintiff filed a First Amended Complaint on July 16, 2018, asserting the following claims on behalf of a putative class: (I) unjust enrichment under Michigan law; (II) FMLA interference, discrimination, and retaliation; and (III) marital discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). The matter is presently before the Court on Defendant's motion to dismiss Counts I and III of Plaintiff's First Amended Complaint, filed pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 17.) The matter has been fully briefed. (ECF Nos. 18, 19.) Finding the facts and legal arguments sufficiently

presented in the parties' briefs, the Court is dispensing with oral argument with respect to Defendant's motion pursuant to Eastern District of Michigan Local Rule 7.1(f). Because the Employee Retirement Income and Security Act of 1974 ("ERISA") preempts Counts I and III of Plaintiff's First Amended Complaint, the Court is granting STE's motion and is dismissing those claims.

## I. Rule 12(c) Standard

A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standards of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However,

"[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## II.    Matters Outside the Pleadings

As an initial matter, Plaintiff objects to STE's introduction of matters outside the pleadings to support its motion to dismiss.  These materials are: (A)  an Adoption Agreement for the Welfare Benefit Plan effective December 1, 2010; (B) an Adoption Agreement for the Welfare Benefit Plan effective June 1, 2013; (C) an election form for medical and dental insurance coverage signed by Plaintiff on November 28, 2011; (D) a form titled "Discretionary Benefits Instruction"; and (E) a form titled "Attendance Policy Instruction."  Plaintiff argues that he neither refers to nor attaches these materials to his Complaint.  The Court disagrees.

In his pleading, Plaintiff challenges reductions to his wages which he asserts were pursuant to STE's production-hour policy.  A careful reading of Plaintiff's pleading reflects that these reductions were contributions toward the cost of his health insurance benefits.  (*See, e.g.*, First Am. Compl. ¶¶ 15-18.)  STE provided health insurance coverage to its employees pursuant to the agreements attached as

Exhibits A and B to STE's motion. Exhibit C to STE's motion reflects that Plaintiff elected health insurance coverage for his family and Exhibit D explains how employees' contributions toward coverage were calculated. An employee's contributions are dependent on his or her attendance record, as outlined in STE's attendance policy (attached as Exhibit E to STE's motion). As such, these materials *are* referred to in Plaintiff's complaint and are central to his claims.

While Plaintiff argues that he needs discovery to ascertain information about various issues (*see* Pl.'s Resp. Br. at 5), none of those topics impact the issue of whether ERISA preempts Counts I and III of Plaintiff's First Amended Complaint. As such, the Court concludes that it may consider the exhibits attached to STE's motion without converting the motion to one for summary judgment. The Court further concludes that it is not premature to decide STE's motion before Plaintiff has the opportunity to conduct discovery.

## III.    Factual Background

STE provides manufacturing, assembly, and engineering services in the aerospace precision machining and fabrication industry. (First Am. Compl. ¶ 7.) Plaintiff was an employee at STE, most recently working as a water jet operator. (*Id.* ¶ 9.) STE's attendance policy includes a production-hour system, by which STE penalizes employees for certain work absences, referred to as "production hours lost." (Def.'s Mot. Exs. C & D.) STE's attendance policy provides for

discipline based on the number of production hours lost, including dismissal for employees incurring more than 100 productions hours.  (*Id*. Ex. D.)  According to STE's policies, unsatisfactory attendance also adversely effects promotional considerations.  (*Id*.)

Moreover, pursuant to the terms of STE's welfare benefit plan, lost production hours impact employees' contributions toward the cost of their medical and dental insurance coverage.  As explained in Paragraph 2.7 of the Discretionary Benefits Instruction, STE paid the full cost of health insurance coverage for employees beyond their 180-day probationary period *unless* they incur missed production hours.[1]  (*Id*. Ex. D.)  The amount an employee must contribute toward the costs of his or her insurance coverage depends on the welfare plans the employee selected and the number of production hours the employee has used. (*See id*. Ex. C and D.)  As Plaintiff states in his First Amended Complaint: "The hourly rate at which an employee was charged varied, depending on whether the employee elected a single-person, two-person, or family medical plan."  (First Am. Compl. ¶ 15.)  The per hour contribution is stated on the Election to Participate Form employees complete.  (*See* Def.'s Mot. Ex. C.)  For the medical and dental

---

[1] STE's attendance policy identifies exceptions for when absences will not count as lost production hours.  (*See* Def.'s Mot. Ex. E at 36.)

insurance plans Plaintiff elected for his family, STE required employees to pay $48.57 and $14.86, respectively, per production hour used.  (*Id*. Ex. C.)

Plaintiff incurred lost production hours due to his late arrival to or absences from work to care for his wife who suffers serious health conditions.  (*See* First Am. Compl. ¶¶ 25-39.)  Plaintiff alleges that he requested, but was denied, FMLA leave in connection with these absences.  (*Id*.)  As a result of his lost production hours, Plaintiff had to contribute toward the costs of his welfare benefits (health and dental insurance).  (*Id*. ¶ 44.)  These amounts were deducted from Plaintiff's paychecks.  (*Id*. ¶ 45.)  STE terminated Plaintiff's employment on November 1, 2017, due to his absenteeism.  (*Id*. ¶ 48.)

In Count I of his First Amended Complaint, Plaintiff alleges that STE was unjustly enriched by the money it deducted from employees' wages under the production-hour system.  In Count III of his First Amended Complaint, Plaintiff asserts that the production-hour system is discriminatory in that it charges higher rates for employees who are married or have families.

## IV.  Applicable Law and Analysis

"ERISA preempts state law and state law claims that 'relate to' any employee benefit plan as that term is defined therein."  *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275 (6th Cir. 1991) (quoting 29 U.S.C. § 1144(a)); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987).  STE's

welfare benefit plan is an ERISA plan. *See* 29 U.S.C. § 1003. "The Sixth Circuit, following the direction of the Supreme Court, has emphasized the broad scope of ERISA preemption, noting that 'virtually all state law claims relating to an employee benefit plan are preempted by ERISA.'" *Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 703 (6th Cir. 2000) (quoting *Cromwell*, 944 F.2d at 1276).

"A law 'relates to' an employee benefit plan … if it has connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). "A state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). As the Sixth Circuit has recognized, "courts have struggled to establish generally applicable rules governing which state laws 'relate to' or have a 'connection with' employee-benefit plans." *Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006); *see also N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995) (finding the text of ERISA's preemption provision to be "unhelpful" and noting the "frustrating difficulty of defining its key term").

The Sixth Circuit "'considers the kind of relief that [the] plaintiffs seek, and its relation to the [ERISA] plan[,]'" to decide whether a state-law claim "relates to" the plan. *Briscoe*, 444 F.3d at 497 (quoting *Ramsey v. Formica Corp.*, 398 F.3d 421, 424 (6th Cir. 2006)) (brackets added); *see also Marks v. Newcourt Credit*

8

*Grp., Inc.*, 342 F.3d 444, 453 (6th Cir. 2003) (explaining that the preemption

determination focuses "on the remedy sought by [the] plaintiffs"). The Sixth

Circuit also has adopted the Fourth Circuit's approach which identifies three

classes of state laws preempted by ERISA:

> ... ERISA preempts state laws that (1) mandate employee benefit
> structures or their administration; (2) provide alternative enforcement
> mechanisms; or (3) bind employers or plan administrators to
> particular choices or preclude uniform administrative practice, thereby
> functioning as a regulation of an ERISA plan itself.

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698

(6th Cir. 2005) ("*PONI*") (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457,

1468 (4th Cir. 1996)). "[A]ny state-law cause of action that duplicates,

supplements, or supplants the ERISA civil enforcement remedy conflicts with the

clear and congressional intent to make the ERISA remedy exclusive and is

therefore pre-empted."[2] *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004).

---

[2] ERISA's civil enforcement remedy is found in 29 U.S.C. § 1132, which in
relevant part permits a civil action to be brought:

> (1) by a participant or beneficiary—
> …
> (B) to recover benefits due to him under the terms of his plan, to
> enforce his rights under the terms of the plan, or to clarify his rights to
> future benefits under the terms of the plan[.]
> …
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or
> practice which violates any provision of this subchapter or the terms
> of the plan, or (B) to obtain other appropriate relief (i) to redress such

By comparison, "'traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries'" are not implicated by ERISA's express-preemption provision. *PONI*, 399 F.3d at 698 (quoting *LeBlanc v. Cahill*, 153 F.3d 134, 147 (5th Cir. 1998)).

Plaintiff was a participant in STE's welfare benefit plan and his unjust enrichment claim is directed to the money STE deducted from his wages as contributions to the cost of his coverage under the plan. While Plaintiff refers only to the production-hour system and the "money paid to Defendant for production-hour charges" within Count I of his First Amended Complaint, the only charges he alleges STE deducted from his wages are those made toward the cost of his family medical plan. Those contributions were pursuant to the terms of STE's welfare benefit plan, even though the amounts were calculated using the number of production hours Plaintiff lost pursuant to STE's attendance policy. The attendance policy itself imposes no financial penalties on employees. As such, Plaintiff's unjust enrichment claim is "tantamount to an action seeking return of contributions made under the terms of the plan and for restitution of any

---

violations or (ii) to enforce any provisions of this subchapter or the terms of the plan …

29 U.S.C. § 1132(a)(1).

10

overpayments under [ERISA's civil enforcement provision]." *Jackson v. Wal-Mart Stores, Inc.*, 24 F. App'x 132, 133 (4th Cir. 2001) (affirming district court's finding that ERISA preempted an employee's claims "alleging that [his employer] made excessive deductions from his wages for insurance premiums."). ERISA therefore preempts Count I of Plaintiff's First Amended Complaint.

In Count III of his First Amended Complaint, Plaintiff alleges that STE engaged in marital discrimination in violation of the ELCRA because "married employees paid a higher financial penalty for tardiness and absences than those who were single." (First. Am. Compl. ¶ 89.) Again, while Plaintiff refers only to the production-hour system, the penalty at issue is the contribution employees are required to make for their insurance coverage under STE's welfare benefit plan. Thus, in essence, Plaintiff is alleging discrimination in the provision of employee benefits pursuant to an ERISA plan.

ERISA does not "proscribe discrimination in the provision of employee benefits." *Shaw*, 463 U.S. at 91. Nevertheless, ERISA plans are subject to federal discrimination laws, such as Title VII, because ERISA does not preempt federal law. *Id*. at 105; *see also* 29 U.S.C. § 1144(d) ("Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States …."). The Supreme Court has held that state laws are saved from ERISA preemption to the extent they "play a significant role in the enforcement of

11

a federal statute." *Id.* at 101. Thus, in *Shaw*, the Court concluded that a state law proscribing discrimination also prohibited under federal law is not preempted by ERISA. *Id.* at 103. If, however, the alleged discrimination is not also prohibited by federal law, the state law claim is superseded. *Id*. at 105-06. In *Shaw*, the Court held that New York's Human Rights Law—which extended employment protections to pregnant workers that Title VII, at the time, did not provide—was preempted by ERISA. *Id*.

Title VII prohibits employment practices which discriminate on the basis of an individual's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a). Unlike the ELCRA, Title VII does not prohibit discrimination on the basis of marital status and Plaintiff does not identify any other federal law that does so. As *Shaw* dictates, Plaintiff's discrimination claim is therefore preempted by ERISA.

Citing *Perry v. P\*I\*E Nationwide Inc.*, 872 F.2d 157, 162 (6th Cir. 1989), and *Kmatz v. Metropolitan Life Insurance Company*, 458 F. Supp. 2d 553 (S.D. Ohio 2005), Plaintiff argues in response to STE's motion that preemption is improper because ERISA does not provide a remedy for the wrongs asserted in Counts I and III of his First Amended Complaint. If the availability of a remedy under ERISA determined its preemptive effect, however, the Supreme Court would

not have found New York's Human Rights Law preempted in *Shaw*. Further, as the Court stated in *Pilot Life*:

> [T]he detailed provisions of § 502(a) [29 U.S.C. § 1132] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."

481 U.S. at 54 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)). Restating the second sentence of the above-quote, the Sixth Circuit has expressly stated: "That ERISA does not provide the full range of remedies available under state law in no way undermines ERISA preemption." *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937, 943 (1995); *see also Cromwell*, 944 F.2d at 1276 ("Nor is it relevant to an analysis of the scope of federal preemption that appellants may be left without remedy."). As analyzed in STE's reply brief, the courts in *Kmatz* and *Perry* found the plaintiffs' claims not preempted by ERISA for reasons not applicable here. (*See* Def.'s Reply Br. at 9-10.)

In conclusion, the Court holds that ERISA preempts Counts I and III of Plaintiff's First Amended Complaint and those claims must be dismissed.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Partial Judgment on the
Pleadings (ECF No. 17) is **GRANTED** and Counts I and III of Plaintiff's First
Amended Complaint are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 26, 2019